**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:24-CR-70-KKC-MAS**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**V.**                            **PLEA AGREEMENT**

**SAMUEL KWADWO OSEI**                                         **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 2 of the Indictment, charging a violation of 18 U.S.C. § 1956(h), Money Laundering Conspiracy, and Count 3 of the Indictment, charging a violation of 18 U.S.C. § 1028A, Aggravated Identity Theft.

2. The essential elements of Count 2 are:

   (a) That two or more people agreed to try to accomplish a common and unlawful plan to:

       a. Conduct financial transactions knowingly involving the proceeds of a specified unlawful activity (that is, wire fraud, bank fraud, and conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1343, 1344, and 1349), in a manner affecting interstate commerce, in order to conceal and disguise the nature, location, source, ownership, and control of the proceeds; or

       b. Conduct monetary transactions by, through, or to a financial institution, of property derived from specified unlawful activity (that is, wire fraud, bank fraud, and conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §§ 1343, 1344, and 1349) in an amount greater than $10,000 and in a manner affecting interstate commerce; and

1

    (b)    The Defendant knew about the plan's unlawful purpose and willfully joined in it.

The essential elements of Count 3 are:

    (a)    That the Defendant knowingly transferred, possessed or used the means of identification of another person without lawful authority; and

    (b)    That the Defendant did so during and in relation to an enumerated felony, that is, wire fraud, bank fraud, and conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1343, 1344, and 1349.

3.     As to Counts 2 and 3, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) At all relevant times, the Defendant, Samuel Kwadwo Osei, worked and operated out of New Jersey, New York, and Colorado. His co-conspirator Nana Kwabena Amuah worked and operated out of Florida, Texas, New York, New Jersey, and elsewhere; his co-conspirator Collins Kwabena Mensah worked and operated out of New Jersey, New York, and Kentucky. Other co-conspirators were located within and outside the United States.

    (b) Co-conspirators located outside the United States convinced victims within the United States to send money under false pretenses, that is, typically through business email compromises. These co-conspirators needed bank accounts located in the United States to facilitate the appearance of legitimacy of the businesses being impersonated in the scheme. These co-conspirators hired managers, including Amuah and Derick Nii Ashitey, who provided the U.S.-based bank accounts to receive victim funds and transfer those funds per the directions of the co-conspirators, while being paid for their participation in the scheme.

    (c) Amuah hired the Defendant to establish bank accounts in the name of shell companies and using the identities of real people. The Defendant in turn worked with Mensah to do the same. The funds deposited into these bank accounts came directly from victims or from co-conspirators. The Defendant knew or had reason to know that the funds entering the accounts he established derived from some form of unlawful activity. He further distributed the funds to his co-conspirators per their direction, including through Zelle transfers, check deposits, wires, and otherwise.

(d) On or about the following dates, OSEI opened accounts in the name of Lasko Company LLC, using the identity of a real person, N.L., and without N.L.'s authority, at the following banks:

| Date of Opening | Financial Institution | Location |
| --- | --- | --- |
| April 19, 2022 | PNC Bank | Denver, Colorado |
| April 20, 2022 | Bank of America | Denver, Colorado |
| April 20, 2022 | Chase Bank | Denver, Colorado |

(e) In August of 2022, co-conspirators impersonated a nonprofit organization having business with the Lexington-Fayette Urban County Government (the "City") over email, instructing City officials to redirect any future payments owed to the nonprofit organization to a new bank account, the Truist Bank account *0109 in the name of Gretson Company LLC, a bank account and shell company established by co-conspirator Shimea Maret McDonald, using the identity of a real person, K.N. On August 14, 2022, OSEI provided Amuah with the information related to the Lasko Company LLC Bank of America account. On August 19, 2022, the City began sending large wires to the Gretson Company LLC account *0109 at the instruction of the coconspirators impersonating the nonprofit organization. In total, the City sent nearly $4,000,000 to the Gretson Company LLC Truist Bank account *0109. On the same day, McDonald deposited check number *901, made out to Lasko Company LLC for $330,000, which was funded by the City's money, into the Lasko Company LLC Bank of America account. Amuah notified OSEI that the check had been deposited by sending him a photo of McDonald holding the check. On August 23, 2022, OSEI notified Amuah that Bank of America had continued to place a hold on this check deposit.

(f) Other victim companies were not able to successfully stop and claw back the funds they sent under false pretenses. For example,

a. In or around May of 2022, Victim Company N.C. LLC was the victim of a business email compromise, having been convinced to redirect payment for a vendor performing contracting work, to a PNC bank account in the name of Lasko Company LLC (*4223) for $167,486.32. After receiving this money, OSEI transferred $3,000 to the Lasko Company LLC account at Bank of America (*0743) via three Zelle transactions, wrote two checks payable to Rchannon Enterprise LLC, a shell company established and operated by a co-conspirator, for $130,000 and $40,000, and completed multiple debit card cash withdrawals.

      b. In or around April 11, 2023, Victim B.E.S. was the victim of an oil and gas investment scam and transferred $52,000 in what B.E.S. believed to be investment funds into M&T Bank account *1447, operated by Mensah under the shell company name, Diercks Enterprise LLC and the name of real person, C.D. On April 12, 2023, Mensah prepared and provided a check for $24,350, drawn on the funds stolen from Victim B.E.S., to OSEI's bank account in the name of his barber shop. With this money, OSEI completed six cash withdrawals totaling $23,150, along with other purchase transactions.

4. The statutory punishment for Count 2 is imprisonment for not more than 20 years, a fine of not more than $500,000 or twice the gross gain or loss, and a term of supervised release of not more than 3 years. The statutory punishment for Count 3 is imprisonment for not less than 2 years, to be served consecutive to any sentence issued as to Count 2, a fine of not more than $250,000 or twice the gross gain or loss, and a term of supervised release of not more than 1 year. A mandatory special assessment of $200 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all money laundering activity associated to all internet-enabled fraud conducted by this conspiracy that was reasonably foreseeable to the Defendant, as well as any identity theft conduct.

<u>Money Laundering</u>

    (c) Pursuant to U.S.S.G. § 2S1.1(a)(2), the base offense level is 8.

(d) Pursuant to U.S.S.G. §§ 2S1.1(a)(2) and 2B1.1(b)(1)(I), the offense level should be increased by at least 16 levels for the value of laundered funds exceeding $1,500,000.

(e) Pursuant to U.S.S.G. §§ 2S1.1(b)(2)(C), the offense level should be increased by 4 levels for Defendant being in the business of laundering funds.

Aggravated Identity Theft

(f) Pursuant to U.S.S.G. § 2B1.6, because the Defendant was convicted of violating 18 U.S.C. § 1028A, the guideline sentence is the term of imprisonment required by statute, two years.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. Absent newly discovered information or evidence, the United States will not seek an enhancement under U.S.S.G. § 3B1.1, based on the evidence currently in its possession.

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant also waives the right to appeal the sentence, except that the Defendant may appeal any aspect of the sentence if the Court sentences the Defendant to a period of incarceration that exceeds the Guidelines range as anticipated in this Plea Agreement. Except for claims of

5

ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

10. The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

11. The Defendant consents to the imposition of a forfeiture money judgment in the amount of $100,817.00, which represents the amount of proceeds that the Defendant obtained as a result of the offenses to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture and/or up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

12. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the investigation, unless an item is specifically provided for in another provision of this

Agreement. This includes the iPhone(s) seized from Samuel Kwadwo OSEI. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

13. The Defendant agrees, pursuant to 18 U.S.C. § 3663(a)(3), to pay restitution in an amount that equals the losses incurred by the victims in this case. The United States believes this figure should be not less than $1,376,507.05, to the victims as outlined in Attachment A to this Plea Agreement, which will be filed under seal. The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis. The parties agree that the Defendant should be jointly and severally responsible with Shimea Maret McDonald and Nana Kwabena Amuah, 5:23-CR-00001-KKC, Collins Kwabena Mensah, 5:25-CR-00037-KKC, and Derick Nii Ashitey, 5:24-CR-00070-KKC, for the Defendant's restitution amount.

14. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or

with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

    15.    The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce

the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

16. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

17. This document and its Attachment A contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

18. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

19. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT U.S. ATTORNEY

Date: 1/22/2026    By: *(signed)* Kathryn M. Dieruf
Assistant United States Attorney

Date: 1/21/2026

Samuel Kwadwo Osei
Defendant

Date: 1/22/26    *(signed)* Thomas C. Lyons
Thomas Lyons
Attorney for Defendant